CW 555

<u>COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT. 42 U.S.C. § 1983</u>

**FILED**

Name __WILLIAMS   ANTONIO   L.__
   (Last)    (First)    (Initial)   DEC 2 0 2007

Prisoner Number __JO5660__

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Institutional Address __CALIFORNIA CORRECTIONAL INSTITUTION__

__P.O Box 1906  4-A-204  TEHACHAPI, CA 93581__

=================================================================

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

**CV 07    6419 CW**

__ANTONIO LUIS WILLIAMS__
(Enter the full name of the
plaintiff in this action)

Case No. _____
(To be provided by the clerk
of court)

**(PR)**

vs.

__N. ALBONICO__

__A. PFADT__

__R. PEERY__

__C. LOCKARD__
(Enter the full name of the
defendant(s) in this action)

COMPLAINT UNDER THE CIVIL
RIGHTS ACT, 42 U.S.C § 1983

(__) DEMAND FOR JURY TRIAL
(✓) NO JURY TRIAL DEMAND
  (check one only)

  All questions on this complaint form must be answered in order
for your action to proceed.

I. <u>Exhaustion of Administrative Remedies</u>

 <u>Note:</u> You must exhaust your administrative remedies before
your claim can go forward. The court will dismiss any
unexhausted claims.

A.    Place of present confinement *CALIF CORRECTIONAL INST.*

B.    Is there a grievance procedure in this institution?
      YES ( ✔ )      NO (   )

C.    Did you present the facts in your complaint for review
      through the grievance procedure?    YES( )    NO ( )   *N/A*
      *THIS ACTION INVOLVED A 832.5 F.B.I
      INQUIRY COMPLAINT ENC*
D.    If your answer is YES, list the appeal number and the date
      and result of the appeal at each level of review.   If you
      did not pursue a certain level of appeal, explain why.

      1.    Informal appeal  *F.B.I COMPLAINT "ACTION"*

      _____

      2.    First formal level  *F.B.I COMPLAINT*

      _____

      3.    Second formal level  *F.B.I COMPLAINT*

      _____

      4.    Third formal level  *F.B.I COMPLAINT*

      _____

E.    Is the last level to which you appealed the highest level of
      appeal available to you?  YES ( ).  NO ( )   *N/A*

F.    If you did not present your claim for review through the
      grievance procedure, explain why.  *ACTION PRESENTED*

      *by WAY OF 832.5 INQUIRY COMPLAINT*

II.  <u>Parties</u>

     Write your name and your present address.  Do the same for
     additional plaintiffs, if any.

     A.  *ANTONIO WILLIAMS J05660*

2

CALiFORNiA CORRECTIONAL INSTITUTION

P.O BOX 1906 4-A-204 TEHACHAPI, CALiF 93581

Write the full name of each defendant, his or her official
position, and his or her place of employment. High DESERT STATE
PRISON P.O BOX 3030 SUSANVILLE, CA 96127 Address For ALL

B. N. Albonico correctional oFFicer, A.PFAST correctional

oFFicer, R. peery seArgANt, C. Lockard seArgANt,

G.Turner seArgANt, C. Moore correctioNAL oFFicer,

T. JACKSON correctioNAL oFFicer

## III. Statement of Claim

State here as briefly as possible the <u>facts</u> of your case. Be
sure to describe how each defendant is involved and to include dates,
when possible. Do not give any legal arguments or cite any cases or
statutes. If you have more than one claim, each claim should be set
forth in a separate numbered paragraph.

CLAiM '1': ON 5-14-02 PLAiNtiFF was AssAuLTed

by DeFeNdANTs while iN hANdCuFFs iN

BAd FAiTH MALicousLy, sAdisticALLy For very

purpose oF cAusiNg hArM As did vioLAT-

ing 8th AmeNdmeNt ProhibitioN AgAiNst

cruel ANd uNusAL puNishmeNt DeFeNdANTs

cAused various INJuries iNcLudiNg

A RT. DisLocATed shouLder goNe uNtr-

eAted TodATe see Exh 1 5-14-02 MedicAL

report. CLAiM '2': ON 8-7-02 I seNt A cit-

12 CLAims CONTiNue
pAges→
FederAL
cAses→

izens complaint against Defendants certified mail regarding and copies of to president George W. Bush, Atty. Gen. John Ashcroft see Exh 2 complaint, receipt and in Nov, 02 plaintiff received a Nov 8, 02 letter in reply from U.S. Dept. of Justice saying it was conducting a investigation see Exh 3 letter of.

CLAIM #3: On July 12, 06 plaintiff right shoulder was confirmed dislocated by UC Davis Dr. J. Tanti and ordered surgery to repair it see Exh 4 Exam letter order of, including a witness letter by calif prison focus witness dislocation of shoulder see Exh 5 letter of

CLAIM #4: Defendants ordered and or conspired with C.D.C.A Dr. David Smith on 11-28-06 to interfere with Dr. Tanti surgical orders to repair plaintiff dislocated shoulder in attempt to protect them and he refused

CONTINUATION
PG 2

During surgery to repair my dis-located shoulder And fraudulent-ly stated in a 11-28-06 report my shoulder wasn't dislocated see Exh 6 surgery report.

CLAIM'S: Defendants had, has politic-ally interfered with plaintiff right to be medically treated by C.D.C on Apr 6, 07 C.D.C.R Dr. David Smith lied told me he would see me after a M.R.I including Dr. Marshall S. Lewis on may 25, 07. see Exhibits 7,8 Letters of.

CLAIM '6': on June 29, 07 plaintiff had a M.R.I And results revealed affection in injured Rt. shoulder joint, bone overriding Another and both Dr. Smith, Dr. Lewis failed to treat me leav-ing me further injured see Exh 9 M.R.I result of.

CLAIM '7' on July plaintiff had a bone scan and results revealed delayed blood flow, bone turned over, affection, etc

CONTINUATION
PG 3

ABNORMALITY EXAM, HEALING FRACTURE RADIOGRAPHS WERE RECOMMENDED PLAINTIFF HAD THE RADIOGRAPHS ON JULY 20,07 IN WHICH PIN NEEDLES WERE INSERTED IN RT. INJURED ARM BUT PRISON MEDICAL AUTHORITIES IN BEHALF OF DEFENDANTS ARE WITHHOLDING RESULTS BUT SEE EXH 10 BONE SCAN RESULTS AND BOTH DR. SMITH, DR. LEWIS STILL REFUSED TO FOLLOW UP TREAT INJURY.

CLAIM '8': PLAINTIFF IS ENTITLED INJUNCTIVE RELIEF, MONETARY DAMAGES FOR PAIN, SUFFERING

CLAIM '9': PLAINTIFF COMPLAINT IS ALLEGEDLY IN A OPEN U.S. D.O.J INVESTIGATION SEE EXH 11 Feb 22,05 COURT ORDER

CLAIM (10) PLAINTIFF STATES THERE WAS NO PRISON DISTURBANCE OR DISCIPLINARY DISTURBANCE FOR

For officers to use excessive force against him as he only gave c/o N. Albonico a note to see a sergant that his life was in danger of staff misconduct of which as mailroom, prison author- ities were holding his outgoing legal mail and in attempt to intimidate me into silence c/o Albonico, c/o Pfadt upon escort to the sergant office And There of both used unnecessary force And all other defendants engaged in so And did not intervene causing injuries to inflict pain.

TOTAL

CLAIM (11)    There is also a use of force video of all of plain- tiff injuries dated 5-14-02

CLAIM (12) Plaintiff states he served U.S. Dept. of Justice, Atty. Gen. Bill Lockyer a affadavit

OF A SETTLE OFFER AGREEMENT
TO MONETARILY SETTLE COMPL-
AINT SEE EXH 12

PLAINTIFF CLAIMS ARE IDENTICAL
TO HUDSON VS MCMILLIAN, 503 US 1, 117
L. ED 2d 156, 112 S. CT. 995 (1992)    ALSO

SEE WHITLEY VS ALBERS (1986) 475 US 312
(106 S. CT. 1078; 89 L. ED. 2d 251).

SEE ALSO FEDERAL CASES
FOR MEDICAL, INJUNCTIVE,
RELIEF ON CONTINUATION PG 6

CONTINUATION Pg 6

"FEDERAL CASES, LAW IN SUPPORT OF" COMPLAINT, RELIEF:

See ESTELLE vs GAMBLE, 429 U.S. AT 105 ("INTENTIONALLY INTERFERING WITH TREATMENT once prescribe"); LAW DON vs DALLAS COUNTY, 286 F.3d 257 (5th cir. 2002) (FAILURE TO FOLLOW MEDICAL orders For care of PARAPLEGIC prisoner); WALKER vs BENJAMIN, 293 F.3d 1030 (7th cir. 2002)

( DENIAL OF MEDICAL CARE For INJURED shoulder WAS UNCONSTITUTIONAL, ALTHOUGH NO PERMANENT INJURY resulted) H.C. vs JARRARD, 786 F.2d 1080, 1083, 1086 (11th cir. 1986)

Prisoners ENTITLED to money DAMAGES AND INJUNCTIVE RELIEF under See ADA AND RA; 2122; KEY vs. GRAYSON, 998 F. Supp. 793 (E.D. Mich. 1998)

See 28 U.S.C § 2283, 2284  Fed RULE 65

"IN reviewing A complaint under this STANDARD, THE COURT MUST Accept AS TRUE THE ALLEGATIONS OF THE COMPLAINT in question, HOSPITAL BLDG. CO. V. REX HOSPITAL THIRTEEN, 425, U.S. 738, 740 (1976), CONSTRUE THE PLEADING IN THE LIGHT MOST FAVORABLE TO THE PLAINTIFF, JENKINS VS. THE PLAINTIFF FAVOR. McKEITHEN, 395 U.S. 411, 421 (1969)

~~FRONT/~~ A.W

IV. <u>Relief</u>   reLieF To be gRANTed by
        see beLow ✓

    Your complaint cannot go forward unless you request specific
relief. State briefly exactly what you want the court to do for you.
Make no legal arguments; cite no cases or statutes.

1.'COMPLAINT TO beFiLed, reFiLed uNderIMMiN-

NeNT HArMS DAngers, 12. COURT order For

INJuNCTiVe reLieF PURSUANT U.S.C.J2283.2284

TO ENForce Dr.TANJI orders to repAir DisLocATed

shoulder. 13.1 To be AwArded 2 MiLLioNDoLLARS
IN COMPENSATORY, PUNiTiVe DAMAGe ∫ 141 DecLATORY
reLieF

DATED:  _12-9-07_      _Antonio williams_
                    (Plaintiff's signature)

4

-----------------------------------------------------------------

### VERIFICATION
### (optional)

I am the plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true. I declare under penalty of perjury that the foregoing is true and correct.

Dated: _____    _Antonio Luis Williams_
                              (Plaintiff's signature)

-----------------------------------------------------------------

### JURY TRIAL DEMAND
### (optional)

I demand a jury trial for all claims for which a jury trial is allowed.

YES ( )        NO (✔)   (check one only)

Dated: _____    _Antonio Williams_ ✗
                              (Plaintiff's signature)

(rev. 11/98)

5

DEPARTMENT OF CORRECTIONS   STATE OF CALIFORNIA

## MEDICAL REPORT OF INJURY OR UNUSUAL OCCURRENCE



| NAME OF HOSPITAL | | | | HOSP | DATE 5/14/02 |
|---|---|---|---|---|---|

| THIS SECTION FOR INMATE ONLY | NUMBER S 05660 | NAME (LAST FIRST) Williams | | OLD HOUSING LOCATION CF-126 | NEW HOUSING LOCATION / |
|---|---|---|---|---|---|
| THIS SECTION FOR STAFF/ VISTOR ONLY | NAME (LAST FIRST MIDDLE) / | | | SEX M  AGE 38  DOB(MO.,DA.,YR.) 12/30/63 | OCCUPATION |
| | HOME ADDRESS / | CITY | | STATE / ZIP | HOME PHONE / |

| TIME OF OCCURRENCE 1830 | PLACE OF OCCURRENCE C | TIME SEEN 1900 | MODE OF ARRIVAL Amb/esc |
|---|---|---|---|

BRIEF RESUME IN PATIENT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE

I gave "em" A note telling them I was Afraid, my life was in jeopardy.

NAME OF WITNESSES, SUMMARIES OF THEIR STORIES, INSOFAR AS AVAILABLE

Staff

NURSE/MTA'S HISTORY OF INJURY/OCCURRENCE  I'm AtoX3  Abrasion @cheek @sholder Swollen with Large Abrasion, Abrasion noted both wrists, Abrasions on both Knee quarter size Abrasion inside ® foot (Bunion Area), Also has heeling wound in bunion area.

| KNOWN ALLERGIES | NKA | DATE OF LAST TETANUS / |
|---|---|---|

| VITAL SIGNS  T: /  BP: /  P: /  R: / | TIME MEDICAL OFFICER NOTIFIED  NA | TIME MEDICAL OFFICER ARRIVED  NA |
|---|---|---|

COMMENTS OF MEDICAL OFFICER

Defered

DIAGNOSTIC IMPRESSION  NA

TREATMENT

ice to face, Abrasions cleaned & bandaged

DESCRIPTION OF SIGNIFICANT CLINICAL LABORATORY AND/OR ROENTGENOLOGIC FINDINGS

NA

DISPOSITION

RTR - Adseg cleaned.

ESTIMATED OR RECOMMENDED NUMBER OF DAYS IN "DISPOSITION" STATUS

Unknown

PROGNOSIS

unknown

| SIGNATURE OF R.N./M.T.A.  C. R.  MTA | SIGNATURE OF MEDICAL OFFICER  MTA |
|---|---|

THAT THIS BE FILED AS CITIZENS COMPLAINT
AGAINST CORRECTIONAL OFFICERS C/O ALBONICO,
C/O PFADT, SERGEANT PERRY, SERGEANT TURNER,
SGT ROCKARD, C/O SCHAPPS, C/O MOORE FOR
ASSAULT AND BATTERY UPON A PRISONER WHILE
IN HANDCUFFS, EXCESSIVE FORCE, ABUSING PRISONER

PS 8832-5

ON MAY 14, 02 I GAVE C/O ALBONICO A NOTE INFORMING
HIM THEREIN I NEEDED TO SEE A SGT. THAT I
WAS FEAR OF MY LIFE AS MAILROOM STAFF CONTINOUSLY
WITHHOLDING, STEALING MY LEGAL OUTGOING
CERTIFIED MAIL EVEN TO THE PRESIDENT GEORGE BUSH.
INSTEAD OF ALLOWING ME TO SEE A SGT. C/O ALBONICO
AND C/O PFADT BOTH HOUSING UNIT OFFICERS PLACED
HANDCUFFS ON ME AND CELLMATE SMITH THROUGH
CELL PORTHOLE AND PLACED US IN A SHOWER AND
SEARCHED OUR CELL, AFTER CELL SEARCH WE WERE
PLACED BACK INSIDE THE CELL, AGAIN BEFORE THE
HANDCUFFS WERE REMOVED I TOLD C/O ALBONICO
PER SAID NOTE GIVEN HIM I NEEDED TO THE SGT.
C/O'S ALBONICO, PFADT PLACED CELLMATE SMITH
BACK INTO THE SHOWER, I WAS LEAD OUT THE CELL
AFTER RETRIEVING A COPY OF A COMPLAINT SENT TO
SUSANVILLE POSTOFFICE EAGLE STATION ATTACHED
OF 20 FELONY, FEDERAL, ANTITRUST MAIL VIOLATIONS
AS SOON AS I WAS LEAD
OUT OF PRESENCE OF INMATES HOUSING BUILDING
FACILITY

WAS LOCKDOWN C/O ALBONICO STARTED SHOVING ME
ABOUT A 100-150 FEET BEFORE ENTERING PROGRAM
OFFICE C/O ALBONICO SNATCHED SAID COMPLAINT
OUT OF MY HAND, AND THROUGH ME TO THE GROUND
AND C/O PFADT WAS HOLDING ME DOWN ON CONCRETE
GROUND = STARTED YELLING FOR HELP C/O ALBONICO
C/O PFADT WAS PUMPELING ME WITH BLOWS STATING
FALSELY AS SO QUIT RESISTING, SGT. PEERY, SGT. TURNER,
SGT. LOCKANT, C/O SCHAPPS, C/O MOORE ALL RAN OUT
PROGRAM OFFICE C/O'S SCHAPPS, MOORE WERE HOLDING
MY LEGGS. SGT.'S LOCKANT, PEERY, TURNER, C/O ALBONICO
C/O PFADT WERE PUMPELING ME WITH BLOWS YELLING
QUIT RESISTING, SGT. PEERY PULLED MY HANDCUFFED
BEHIND BACK HANDS OVER MY HEAD AS I WAS
LYING ON GROUND "C/O ALBONICO PLACED HIS FOOT
ON MY HEAD AND SMEARED RIGHT SIDE OF FACE
ON CONCRETE PAVEMENT CAUSING INJURY, ALSO INJURY
TO RIGHT SHOULDER BY ASSAULT THROWN TO PAVEMENT
THE TORTUING CONTINUED TIL I URINATED ON MYSELF.
SAID PRISON STAFF CONDUCTED A ON VIDEO CAMERA
INTERVIEW FOR REQUIRING USE OF FORCE OF MY INJURIES
USING SGT. TURNER WHO ASSAULTED ME DO SAID
INTERVIEW OVER MY ON CAMERA REFUSAL HE DO
SO. I WAS THENS AFTER FALSELY PLACED IN ADMINISTRAT.
IVE SEGREGATION AND GIVEN A FALSE C.D.C 115
DISCIPLINARY WRITE UP FOR RESISTING STAFF.
THERE WERE 2 INMATE PROGRAM OFFICE CRITICAL

WORKERS WITNESSED THE BEATING AS WAS OUTSIDE ON CIGGARETTE BREAK. ON MAY 15, 02 I HAD XRAYS OF RIGHT SHOULDER AND WAS NEVER TAKEN BACK TO MEDICAL CLINIC FOR SCHEDULED FOLLOW UP. I SENT COMPLAINTS TO LOCAL F.B.I 4500 ORANGE GROVE SACRAMENTO, CALIF ALSO HONORABLE CONGRESSWOMAN BARBARA LEE WHOM BOTH APPARENTLY CONTACTED CALIF PRISON UNION ASSOCIATION ACCORDING TO LT. BECKMAN FACILTY'S INSTITUTIONAL SECURITY UNIT INVESTIGATOR WHOM I'VE NOTIFIED BY COMPLAINT SEE ENCLOSED EXHIBIT 1 LT. BECKMAN FAILED TO INVESTIGATE AS WAS DESIGNATED OR INTERVIEW WITNESSES ON TAPE OR USE FORSEEN PHYSICAL EVIDENCE OF MY INJURIES, INCLUDING ON VIDEO TAPE AND XRAY FINDINGS TO REPRIMAND, DISCIPLINE SAID CORRECTIONAL OFFICERS AS STATED HE WOULD INSTEAD LT. BECKMAN, H.D.S.P PRISON OFFICIALS INRESPONSE TO COMPLAINT, INVESTIGATION FALSIFIED INFO OF UNSUBSTANTIATED SEE EXHIBITS 2, 3 THIS IS SECOND ASSAULT ON ME, IN DEC, 00 I WAS ASSAULTED AND IT WAS FALSIFIED I PLED TO SAID FALSIFIED C.D.C 115 FOR THREATENING A OFFICER INLIEU ALSO TO FURTHER HARASS STATED I SAID I WAS F.B.I SEE EXHIBIT 4

H.D.S.P under Acting Warden D.L. Runnels policy is to assault handcuff prisoners for racial, disciplinary, kicks various mutiple inmates have been beaten in cuffs choked unconcious til urinating, defacating on themselves and Falsely changed with assaulting staff as done to inmates Elwood Hayes CDC no. K-50096 As He's housed in facilty D-8 also inmate Timothy Epps He's housed in facilty D-7 both in isolation. Someone is going to get accidently murdered by staff Abusing prisoners. Petitioner request all video, xray CDC 115. Findings, other material relating to assault against him be subpcona investigated by justice dept. "As is a 8th amendment violation.

I also be protected from retaliation by H.D.S.P staff and halt, harassment, Abuse, theft of outgoing legal certified mail by mailroom staff illegally censoring it which endangerd my life requesting to see a Sgt.

Dated: 8-6-02

Antonio williams

Each Dept. which employs peace officers shall establish a procedure to investigate citizen's complaints and shall make a written description of the procedure avail...
to the...

I SENT CERTIFIED MOTION POSTMARKED JUNE 6, 02     CW
FOR U.S DEPT. OF JUSTICE CIVIL RIGHTS CASE NO. 168-11E-012598
ALSO HONORABLE PRESIDENT George W. Bush BUT FACILITY
WITHHELD FROM LEAVING FALSIFIED IT did IN Attached
STATE DOCUMENT "IN A POSTMARKED JUNE, 24, 02 CERTIFIED
LETTER I INFORMED OF SO." ENCLOSED IS A COMPLAINT
AS DATED 8-6-02, ALSO PRESIDENT Bush AS Addressed
WAS SENT CERTIFIED COPY AS WELL

STATE OF CALIFORNIA

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

DEPARTMENT OF CORRECTIONS

Location:  Institution/Parole Region          Log No.          Category

1. _____    1. _____

2. _____    2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|-----------|------------------|
| WiLLiAMU. A | JO 5660 | ✗ | D-3-211 |

A. Describe Problem: FORWARD INMATE his POSTAL POSTMARKED 6-18-02 Receipt FOR CERTiFied, MAiL TO PResidENT GEORGE BUSh OR I WiLL ResUBMiT ANd chANGEd FACiLiTY WiTh iNTeRFeRiNG WiTh RiGhT TO AppEAL, AddRess GRiEVANCES peRtAiN TO LiFE, LiBERTY TheReTO pResidENT ON 6-23-02 "OFFiCERS ARE AWARE TO ALL sENT MAiLiNGS TO MAiLRООM

f you need more space, attach one additional sheet.

B. Action Requested: FORWARD iNMATE his U.S POSTAL ReceipT ON LogBook pg TO PResidENT BUSh.

Inmate/Parolee Signature: _Anton Williams_                          Date Submitted: **6-20-02**

C. INFORMAL LEVEL (Date Received: 06/24/02  )

Staff Response: mailroom records do not indicate a certified letter being sent by you to President George Bush, however one was sent out via regular first class mail on 6-17-02

Staff Signature: _C Kosub OA_                          Date Returned to Inmate: 06/24/02

D. FORMAL LEVEL
you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____                          Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

Exhibit 1.

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE APPEAL FORM**

CDC 602 (12/87)

Location: Institution/Parole Region
1. HDSP-S
2.

Log No.
1. 0201079
2.

Category 7
Pof 832 5

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | | | UNIT/ROOM NUMBER |
|------|--------|-----------|---|---|-----------------|
| WILLIAMS Antonio | T05660 | | ✖ | ✗ | D-8-201 |

A. Describe Problem: That This beFiled As A Citizen's complaint Against C/O Albonico For Assault/Battery, Assaulting a inmate while in Handcuffs, Excessive Force. On May 14.02 "I gave C/O Albonico A note informing him My life was in Jeopardy by staff by various Abuses, Theft of Legal Mail A needed to see A Seargant "This took place AT 5:30 p.m in presence cellmate smith As we were housed in Building C-8

You need more space, attach one additional sheet.

Inject + I be protected Against Reprisals

Action Requested: I.S.U investigation only. "No Appeal coordinator process on investigation." Interview program clerks, cellmate smith, petitioner. "polygraph For All officers involved. check Files To see if Assaulted other inmates or Fabricated CDC #115

Inmate/Parolee Signature: Antonio Williams    Date Submitted: 5-27-02

INFORMAL LEVEL (Date Received: _____)

Staff Response: _____

Bypass

Staff Signature: _____    Date Returned to Inmate: _____

FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit it to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

Bypass

'02 JUL 18 PM 8 10

Signature: _____    Date Submitted: _____

Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

First Level:  ☐ Granted   ☑ P. .nted   ☐ Denied   ☐ Other_____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _5/31/02_   Due Date: _7/15/02_

Interviewed by: _C. BECKMAN, ISU LT._

_____

SEE ATTACHED

_____

_____

_____

Staff Signature: _C. Beckman_   Title: _ISU LT._   Date Completed: _7-2-02_

Division Head Approved:

Signature: _(signature)_   Title: _ISU mgt_   Returned Date to Inmate: _7/2/02_

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

_H.D.S.P STAFF SENT SAID RESPONSE TO ME AS I RECEIVED 7-15-02 IN ATTEMPT TO VIOLATE TIME CONSTRAINT ON 2nd LEVEL REVIEW. This WAS A ATTEMPTED MURDER. F.B.I, CONGRESS BARBARA LEE WAS NOTIFIED OF CHANGES. ISU did NOT INVESTIGATE_

Signature: _Antonio Williams_   Date Submitted: _7-16-02_

Second Level   ☐ Granted   ☑ P. Granted   ☐ Denied   ☐ Other_____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: _7-18-02_   Due Date: _8-15-02_

☑ See Attached Letter

Signature: _(signature)_ CEII   Appeals Coordinator   Date Completed: _7/23/02_

Warden/Superintendent Signature: _(signature)_ (ON[JCK])   Date Returned to Inmate: _7-25-0_

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

_I.S.U did NOT INVESTIGATE INTERVIEW PETITIONER WITNESSES, NO POLYGRAPH TEST WAS done; NO MENTION OF XRAY RESULT OF RIGHT SHOU ALSO LT. BECKMAN OF I.S.U did NOT RECEIVE ANY TAPE STATEMENTS FROM WITNESSES, ALSO VIDEO TAPE purpo ASSAULT INJURIES. THE ALLEGE INVESTIGATION WAS UNDERMINED NEGLIGENTLY TO PROTECT OFFICERS._

Signature: _Antonio Williams_   Date Submitted: _7-30-02_

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DIRECTOR'S ACTION:   ☐ Granted   ☐ P. Granted   ☐ Denied   ☐ Other _____
☐ See Attached Letter

CDC 602 (12/87)   Date: _____

CELL 126 "~~~~~~~~~~~ C/O ALBONICO LEFT CAME R R WITH C/O PFADT BOTH Building 8 OFFICERS TOLD ME AND CELLMATE SMITH TO BACKUP TO PORTHOLE AND PLACED HAND CUFFS ON EACH OF US TOLD TOWER OFFICER PETERSON TO OPEN CELL DOOR AS WERE PLACED INSIDE SHOWER AND CELL WAS SEARCHED. AFTER SEARCH WE WERE PLACED BACK INSIDE THE CELL AS THE HANDCUFFS WERE STILL ON, AGAIN per NOTE I INFORMED C/O ALBON' O I NEEDED TO SEE THE SGT C/O PFADT PLACED CELLMATE SMITH BACK IN SHOWER. C/O ALBONICO, C/O PFADT TOOK ME OUT OF CELL AND WAS ESCORTING ME TO PROGRAM OFFICE "ABOUT 100,150 FEET BEFORE ENTERING PROGRAM

OFFICE C/O ALBONICO ATTACKED ME KNOCKING ME TO THE GROUND FOR NO REASON AND C/O PFADT AND C/O ALBONICO STARTED PUMPELING ME WITH BLOWS AS I'm YELLING FOR help C/O ALBONICO, C/O PFADT ARE HITTING ME SAYING QUIT RESISTING. SGT. G.TURNER, SGT. LOCKAND, SGT. BERRY, C/O SCHAPPS ALL CAME OUT OF PROGRAM OFFICE JUMPED ON ME PUMPELING ME WITH BLOWS YELLING QUIT RESISTING. THIS ASSAULT CAUSING VXTIOUS INJURIES WAS WITNESSED by 2 INMATE PROGRAM OFFICE CLERKS ON A CIGGARETTE BREAK, SGT. G. TURNER WHO ASSAULTED ME IS INVESTIGATING VIDEO INTERVIEW OF INJURIES REQUIRING USE OF FORCE AGAINST ME OVER MY REFUSAL ON VIDEO INTERVIEW SGT. TURNER do so. ✓

EACH DEPT. WHICH EMPLOYS PEACE OFFICERS SHALL ESTABLISH A PROCEDURE TO INVESTIGATE CITIZENS COMPLAINTS AND SHALL MAKE A WRITTEN DESCRIPTION OF THE PROCEDURE AVAILABLE TO THE PUBLIC PC§ 832.5

te of California                              $Exhibit 2$                    Department of Corrections

# Memorandum

te:    July 2, 2002

:      Inmate  WILLIAMS, J-05660
       Housing Unit FDB3-211L


oject:   **APPEAL LOG # HDSP-S-02-01079**
         **FIRST LEVEL RESPONSE**

APPEAL DECISION: Appeal Partially Granted.

APPEAL ISSUE:  You stated that Correctional Officers Albonico and Pfadt ordered you and
your cellmate to back-up to the food port to be placed into handcuffs when you were housed in
FCB8-126. You stated that you were placed into the shower and Officers Albonico and Pfadt
searched your cell. You stated that you and your cellmate were placed back into your assigned
cell. While you were still in handcuffs, you told Officer Albonico that you needed to see the
Sgt. Your cellmate was placed into the shower and Officers' Albonico and Pfadt escorted you
to the program office. You alleged that while you were under escort and approximately one
hundred to one hundred and fifty feet from the program office, Officer Albonico attacked you,
knocking you to the ground for no reason. You have alleged that Officers' Albonico and Pfadt
started assaulting you, striking your upper torso areas with their fists. You stated that you
yelled for help and Sgt. Turner, Sgt. Lockard, Sgt. F·ery and C/O Schapp all responded out of
the program office and jumped on you. You alleged that all responding staff started striking
you with their fists while they yelled, "Quit resisting".

You stated that this assault caused various injuries to your person and two inmate program
office clerks that were out on a cigarette break witnessed the assault. You alleged that Sergeant
Turner assaulted you and then conducted the videotaped interview of you due to the injuries
you sustained during the incident, against your will. You stated that Officer Albonico started
pushing you when the escort to the Sergeant's office began. You stated that Officer Albonico
grabbed the complaint out of your hand, pushed you down to the asphalt on the patio and
started attacking you with his fists, striking your sides and back. You stated that Officer
Albonico scarred your face by putting his foot on your head. You stated that you screamed for
help while Officer Pfadt held you down. You alleged that all of the officers falsified
documents. During your interview you stated that Officer Moore was also holding you down,
torturing you. All of the C/O's that were holding you down were torturing you.

You have requested that you be protected against reprisals and that the Investigative Services
Unit conduct an investigation into your allegations.  You have requested that the two program
clerks and your prior cellmate be interviewed. You also requested that the petitioner and all
involved staff be given a polygraph and that files be checked to see if the involved staff has
assaulted other inmates or fabricated CDC 115's.

age 2

APPEAL RESPONSE: Mr. Williams, in reaching a decision in your appeal, your CDC-602 and its attachments, your Central File, applicable sections of the California Code of Regulations (CCR) Title 15, Departmental Operations Manual (DOM), and your interview on June 21, 2002 with ISU Lt. Beckman, were reviewed and considered.

Your request to be protected against reprisals for filing this appeal is granted. 3084.1 (d) specifically states that No reprisal shall be taken against an inmate or parolee for filing an appeal.

Your request to have this appeal investigated by the Investigative Services Unit is considered granted as the issues you have cited have been researched. The administrative inquiry revealed that your allegations of misconduct on the part of Correctional Officers' N. Albonico, A. Pfadt, C. Moore, T. Jackson and Correctional Sergeants' R. Peery, C. Lockard and G. Turner can not be substantiated. The aforementioned Correctional Officers and Sergeants acted within the regulations and their scope of duty when this incident occurred. All allegations of staff misconduct are reviewed and evaluated to determine if the evidence supports the accusations.

Personal information associated with employee discipline is restricted and if any misconduct by the employee connected with your complaint was discovered during the review, the appropriate corrective measures will be taken.

Considering the information above your appeal has been partially granted. If you are dissatisfied with this decision, you may request a Second Level Review by following the instructions on your appeal form.


T. FELKER
Associate Warden
Complex II


c:    Central File
      Appeal File

State of California

Department of Corrections

# Memorandum

Exhibit 3

Date:    July 23, 2002

To:    Williams, J-05660
       High Desert State Prison

Subject: SECOND LEVEL APPEAL RESPONSE
         LOG NO.:    HDSP 02-01079

ISSUE:

It is the appellant's position that during an escort to the Facility C Program Sergeant's Office, Correctional Officer (C/O) Albonico and C/O Pfadt assaulted him. The appellant further alleges that he cried out for help, at which time Correctional Sergeant Turner, Correctional Sergeant Peery, and C/O Schapp all responded from the Program Office and attacked him.

The appellant requests on appeal that Investigative Services Unit (I.S.U.) investigated this incident. The appellant further requests that his witnesses be interviewed and that the staff members who are named in this appeal submit to polygraph examination. Lastly, the appellant requests for his Central File to be reviewed to determine if he has a staff assualtive history.

INTERVIEWED BY: C. Beckman, Correctional Lieutenant

REGULATIONS: The rules governing this issue are:

**California Penal Code Section (PC) 832.7. Personnel records; confidentiality; discovery; exceptions; complaint disposition notification**
        (a) Peace officer personnel records and records maintained by any state or local agency pursuant to Section 832.5, or information obtained from these records, are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code. This section shall not apply to investigations or proceedings concerning the conduct of police officers or a police agency conducted by a grand jury, a district attorney's office, or the Attorney General's office.
        (e) The department or agency shall provide written notification to the complaining party of the disposition of the complaint within 30 days of the disposition.

**PC 832.8. Personnel records**
        As used in Section 832.7, "personnel records" means any file maintained under that individual's name by his or her employing agency and containing records relating to any of the following:
        (d) Employee advancement, appraisal, or discipline.

WILLIAMS, J-05660
CASE NO. 02-01079
PAGE 2

(e) Complaints, or investigations of complaints, concerning an event or transaction in which he or she participated, or which he or she perceived, and pertaining to the manner in which he or she performed his or her duties.

## California Code of Regulations, Title 15, Section (CCR) 3004. Rights and Respect of Others.

(a) Inmates and parolees have the right to be treated respectfully, impartially, and fairly by all employees. Inmates and parolees have the responsibility to treat others in the same manner. Employees and inmates may use first names in conversation with ea. h other when it is mutually acceptable to both parties.

(b) Inmates, parolees and employees will not openly display disrespect or contempt for others in any manner intended to or reasonably likely to disrupt orderly operations within the institutions or to incite or provoke violence.

(c) Inmates, parolees and employees will not subject other persons to any form of discrimination because of race, religion, nationality, sex, political belief, age, or physical or mental handicap.

## CCR 3084.1. Right to Appeal.

(d) No reprisal shall be taken against an inmate or parolee for filing an appeal. This shall not prohibit appeal restrictions against an inmate or parolee abusing the appeal process as defined in section 3084.4.

## CCR 3391. Employee Conduct.

(a) Employees shall be alert, courteous, and professional in their dealings with inmates, parolees, fellow employees, visitors and members of the public. Inmates and parolees shall be addressed by their proper names, and never by derogatory or slang reference. Prison numbers shall be used only with names to summon inmates via public address systems. Employees shall not use indecent, abusive, profane, or otherwise improper language while on duty. Irresponsible or unethical conduct or conduct reflecting discredit on themselves or the department, either on or off duty, shall be avoided by all employees.

Upon review of the documentation submitted, it is determined that the appellant's allegations have been reviewed and evaluated by administrative staff and a fact finding investigation has been completed at the First Level of Review.

In the event that staff misconduct was substantiated, the institution would take the appropriate course of action. All staff personnel matters are confidential in nature and not privy to the inquiries of other staff, the general public or the inmate population, and would not be released to the appellant. However, upon completion of final review, or culmination of an investigation, the appellant is to be notified by the respective investigative body that an inquiry has been completed and whether the complaint was unsubstantiated or substantiated. In this case, the complaint was not substantiated.

Although the appellant has the right to submit an appeal as a staff complaint, the request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the appeals process.

Therefore, your request for no reprisals for filling this appeal is considered granted. CCR Title 15 section 3084.1 is very clear in regards to an inmate filing an appeal and that no reprisals will be taken against an inmate for doing so.

WILLIAMS, J-0566(
CASE NO. 02-01079
PAGE 3

Your request to have this appeal investigated by the I.S. U. is considered granted.  I.S.U.
Lieutenant Beckman interviewed you and collected the relevant evidence during the fact
finding inquiry into your allegations.

<u>DECISION</u>: The appeal is granted in part.

The appellant is advised that this issue may be submitted for a Director's Level of
Review if desired.

T. FELKER
Chief Deputy Warden (A)

c: Central File
   Appeals File

State of California

Department of Corrections
High Desert State Prison

# Memorandum

Date:     March 1, 2002

$Exhibit\ 4$

To:      Inmate Williams, J-05660
         FCB6-227L

Subject:   **SAFETY CONCERNS**

On February 5, 2002, a letter that you authored was forwarded to High Desert State Prison from Regional Administration-North for response. In your letter you state that you were in fear for your safety from Facility D Staff specifically, Correctional Officers K. Gullion and Karelas. You state that these officers released everyone in the FDB1 housing unit for the morning meal except for you and your cellmate. You further state that you were eventually released "last". You state that Officer Gullion authored a fictitious CDC 115 Rules Violation Report (RVR) and that during an escort from your building to the program office, Officer Gullion and Officer Karelas punched you repeatedly.

On February 28, 2002, you were interviewed by Lieutenant M. Bolls regarding the aforementioned safety concerns. You advised Lieutenant Bolls that you no longer have problems relative to your safety as you are now housed on Facility C. You further informed Lieutenant Bolls that you had filed a staff complaint against Officer Gullion relative to this issue and that you believe it is now at Third Level Review and that you did not wish to pursue this matter any further.

A review of both your Central file and Inmate Appeal records revealed the following. The RVR that you state was fictitiously authored by Officer Gullion dated December 3, 2000, was located and it is noted that you were charged with threatening a peace officer. It was also noted that you pled guilty to this charge and stated, "Yeah I know I should have kept my mouth shut, that's cool."

The staff complaint that you filed against Officer Guillion (Appeal Log # HDSP-S-00-032112) was in regard to the incidents that you state occurred on December 3, 2002. During your interview with Correctional Lieutenant C. Adams for First Level Response, you stated that departmental rules and regulation did not apply to you due to you being a federal agent and you refused to sign the required CDC Form 1858 Rights and Responsibility Statement. Due to your lack of cooperation your appeal was cancelled.

Based on the above, there is sufficient evidence to refute your allegations of staff misconduct. In the future, you are encouraged to exhaust administrative remedy by utilizing the inmate appeals process whenever you believe that any departmental decision, action, condition, or policy has adversely effected your welfare.

D. L. RUNNELS
Warden

Williams

STATE OF CALIFORNIA                                          DEPARTMENT OF CORRECTIONS

CDC 1858 (2/97)

# RIGHTS AND RESPONSIBILITY STATEMENT

*The California Department of Corrections has added departmental language (shown inside brackets, in non-boldface type) for clarification purposes.*

**Pursuant to Penal Code 148.6, anyone wishing to file an allegation of misconduct by a departmental peace officer must read, sign and submit the following statement.**

YOU HAVE THE RIGHT TO MAKE A COMPLAINT AGAINST A POLICE OFFICER [this includes a departmental peace officer] FOR ANY IMPROPER POLICE [or peace] OFFICER CONDUCT. CALIFORNIA LAW REQUIRES THIS AGENCY TO HAVE A PROCEDURE TO INVESTIGATE CITIZENS' [or inmates'/parolees'] COMPLAINTS. YOU HAVE A RIGHT TO A WRITTEN DESCRIPTION OF THIS PROCEDURE. THIS AGENCY MAY FIND AFTER INVESTIGATION THAT THERE IS NOT ENOUGH EVIDENCE TO WARRANT ACTION ON YOUR COMPLAINT; EVEN IF THAT IS THE CASE, YOU HAVE THE RIGHT TO MAKE THE COMPLAINT AND HAVE IT INVESTIGATED IF YOU BELIEVE AN OFFICER BEHAVED IMPROPERLY. CITIZEN [or inmate/parolee] COMPLAINTS AND ANY REPORTS OR FINDINGS RELATING TO COMPLAINTS MUST BE RETAINED BY THIS AGENCY FOR AT LEAST FIVE YEARS.

IT IS AGAINST THE LAW TO MAKE A COMPLAINT THAT YOU KNOW TO BE FALSE. IF YOU MAKE A COMPLAINT AGAINST AN OFFICER KNOWING IT IS FALSE, YOU CAN BE PROSECUTED ON A MISDEMEANOR CHARGE. [An inmate/parolee who makes a complaint against a departmental peace officer, knowing it is false, may be issued a serious disiplinary rule violation, in addition to being prosecuted on a misdemeanor charge.]

| COMPLAINANT'S PRINTED NAME | COMPLAINANT'S SIGNATURE | DATE SIGNED | |
|---|---|---|---|
| WILLIAMS ANTONIO | Antonio Williams | 7-2-02 | |
| INMATE/PAROLEE PRINTED NAME | INMATE/PAROLEE'S SIGNATURE | CDC NUMBER | DATE SIGNED |
| WILLIAMS, ANTONIO | | J05660 | |
| RECEIVING STAFF'S PRINTED NAME | RECEIVING STAFF'S SIGNATURE | DATE SIGNED | |
| C. BERMAN, LT. | C. Berman | 7-2-02 | |

DISTRIBUTION:
ORIGINAL -
Public - Institution Head/Parole Administrator
Inmate/Parolee - Attach to CDC form 602
Employee - Institution Head/Parole Administrator
COPY - Complainant

"Exh"

**2**

Proof
Service

U.S. Postal Service
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

| | | |
|---|---|---|
| Postage | $ | 83 |
| Certified Fee | | 2.30 |
| Return Receipt Fee (Endorsement Required) | | |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | 3.13 |

Sent To _Attorney General John Ashcroft_
Street, Apt. No.; or PO Box No. _PO BOX 3030_
City, State, ZIP+4 _Washington DC 20035_

PS Form 3800, January 2001            See Reverse for Instructions

---

| | | |
|---|---|---|
| Postage | $ | 83 |
| Certified Fee | | 2.30 |
| Return Receipt Fee (Endorsement Required) | | |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | 3.13 |

Sent To _President Bush_
Street, Apt. No.; or PO Box No. _1600 Pensylvania Av_
City, State, ZIP+4 _Washington DC 20520_

PS Form 3800, January 2001            See Reverse for Instructions



U.S. Department of Justice

Civil Rights Division



ANM:TLM:yl:bah
DJ 144-11E-1434

Criminal Section - PHB
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

NOV 8

Mr. Antonio Williams
J05660
High Desert State Prison
P.O. Box 3030
Susanville, CA 96127

Dear Mr. Williams:

This is in response to your undated letter, in which you allege that you were physically assaulted by corrections officers in High Desert State Prison on May 14, 2002.

The Federal Bureau of Investigation has been requested to conduct a preliminary investigation into this matter. You can be assured that if the evidence shows that there is a prosecutable violation of federal criminal civil rights statutes, appropriate action will be taken.

Thank you for bringing this matter to our attention.

Sincerely,

Albert N. Moskowitz
Section Chief
Criminal Section
Civil Rights Division

By:

Tamara Miller
Deputy Chief
Criminal Section

cc: Records Chrono Levy T. 10/31/02
S:\ylevy\MyFiles\Correspondence\Citizen Letters\Williams_Antonio FBI.wpd



# UCDAVIS
## HEALTH SYSTEM

### TELEMEDICINE

*Exhibit 4*

July 19, 2006

RE: WILLIAMS, ANTONIO
MR#: 1827333
DOB: 12/26/1963
Date of Service: 07/19/2006
CDC#: J05660

Harold Tate, M.D.
California Correctional Institute
P.O. Box 1031
Tehachapi, CA 93581

Dear Dr. Tate:

Thank you very much for requesting a consultation on behalf of Antonio Williams, whom I had the pleasure of seeing in Orthopedic Telemedicine Clinic.

History Of Present Illness:
As you know, Mr. Williams is a right-handed gentleman who in 2002 suffered a severe traumatic right shoulder glenohumeral dislocation. The shoulder was dislocated with a dead-arm syndrome, numbness, tingling, and weakness in the arm. Since that time, he has had recurrent episodes of shoulder dislocation, more than five occasions. When it does happen, his arm tends to be weak and numb. He has pain at night, pain worse while trying to sleep or turn on that side. Pain is worse with any impingement maneuvers. He has had an x-ray which is within normal limits and an MRI showing tendinopathy within supraspinatus tendon and minimal AC joint hypertrophy. At this stage, he willing to discuss a shoulder stabilization procedure.

Past Surgeries:
1. ~~Status post jaw fracture~~

Medical Illnesses:
1. Hypertension.
2. Gastroesophageal reflux disease.

Medications:
Ranitidine, triamterene, hydrochlorothiazide, Naprosyn.

Allergies:
None known.

Family History:
Noncontributory.

Social History:
He is incarcerated.

Review Of Systems:
I refer you to the paper medical record.

Physical Examination:

Regional Outreach & Center of Health & Technology
2500 Stockton Boulevard, Suite 3300 • Sacramento, California 95817-1418
(916) 734-5675 • Fax (916) 734-1366

RE: WILLIAMS, ANTONIO 
MR#: 1827333

Page 2

On physical examination, he is an alert, cooperative gentleman in no acute distress. Gait and posture are normal. His arms are in restraints. Unfortunately, because of security clearance the restraints could not be removed and I could not perform a standard physical examination.

The MRI and x-ray results are as above.

Assessment:
Right shoulder glenohumeral dislocation, recurrent by history. Evaluation limited by the inability to do a physical examination because of restraints due to security clearance.

Plan:
I am recommending that Mr. Williams be evaluated for a capsular stabilization procedure. I realize that my recommendation is limited by the constraints of being unable to do a physical examination, but I feel it is quite reasonable given his history.

The patient was educated in the impression and the plan of care.

Thank you very much for your kind request for consultation.

Sincerely yours,

JEFFREY L TANJI, MD
ASSOCIATE MEDICAL DIRECTOR
DIVISION OF UCDHS PRIMARY CARE NETWORK
DEPARTMENT OF SPORTS MEDICINE
THIS WAS ELECTRONICALLY SIGNED - 07/21/2006 1:15 PM PST BY:

JLT:js(ml006)

D:    07/19/2006 08:49 AM
T:    07/20/2006 02:32 PM
C#:   2001149

*5*
"Exhibit" #



California Prison Focus
2940 ₁₆ᵗʰ Street, Suite B-5 San Francisco, CA 94103
Phone: (415) 252-9211   Fax: (415) 252-9311
www.prisons.org

Chief Medical Officer Tate
California Correctional Institution
P.O. Box 1031
Tehachapi, CA 93581

June 27, 2005

Re: Antonio Williams, J-05660

Dear C.M.O. Tate:

    I am writing in regards to an untreated medical need of Antonio Williams, a prisoner recently transferred to CCI-Tehachapi. Mr. Williams has a dislocation of his right shoulder, which occurred three years ago. Mr. Williams has received no treatment for 3 years. If Mr. Williams holds his hands behind his back in a certain way, his shoulder has a large lump on it, about the diameter of a tennis ball, which is discolored. I personally observed the lump on a visit with him last month.

    The Chief Medical Officer of Pelican Bay sent a letter to our office on 12-22-04, stating that Williams's shoulder x-ray was normal. However, Mr. Williams has informed me that he continues to suffer chronic shoulder pain, which manifests as follows: he can't exercise; he can't effectively press his arm down while writing, making it harder for him to write (he is right-handed); he "feels the separation" in his joint.

    Mr. Williams has never seen an orthopedist about his condition, and he has never received an MRI. I am not a doctor or medical expert, but I know that, at a minimum, given the large, discolored lump which is visible on his shoulder, and his continued complaints of pain, he ought to see a specialist. To deny him the attention of a specialist may be to deny him the ordinary standard of care. In addition, I am concerned that CDC has not released Mr. Williams' medical files to CPF, despite the fact that Mr. Williams informs me that he signed and submitted an authorization for us to view his files.

    Mr. Williams is currently in the process of exhausting the 602 process, having submitted a third-level appeal last month. In the meantime, he awaits medical attention and care which is consistent with the ordinary standard of medical care. Please provide him with the needed medical attention, and please contact me at 415-252-9211 to discuss this matter.

Sincerely,

Scott Handleman, Attorney at Law

Cc: Antonio Williams

*Exh 6*

**CORCORAN DISTRICT HOSPITAL**
**1310 HANNA AVENUE**
**CORCORAN, CALIFORNIA 93212**
**Telephone/559-992-5051  -  Fax\559-992-3972**

### OPERATIVE REPORT

PATIENT:  WILLIAMS, ANTONIO
#J05660
DATE OF SURGERY:  11/28/06

OPERATING SURGEON:        DAVID G. SMITH, M.D.

ANESTHESIA:              General
COMPLICATIONS:           None

PREOPERATIVE DIAGNOSIS:
Internal derangement, right shoulder, with possible subluxing or
dislocating right shoulder.

POSTOPERATIVE DIAGNOSIS:
1.   No evidence for recurrent dislocations, right shoulder.
2.   SLAP lesion, right shoulder.
3.   Severe impingement, right shoulder.

OPERATION PERFORMED:
1.   Examination of the right shoulder under anesthesia.
2.   Arthroscopy, right shoulder.
3.   Debridement of hypertrophic synovitis with partial
     synovectomy.
4.   Debridement of SLAP lesion and repair of SLAP lesion, right
     shoulder.
5.   Arthroscopic subacromial decompression, right shoulder.

PROCEDURE:
The patient was brought to the operating room and satisfactory
anesthesia was established.  The right shoulder was then examined
under anesthesia.  The history was quite vague in terms of actual
dislocations of the right shoulder.  For that reason, a thorough
examination of the shoulder was carried out under anesthesia.
There was some very mild laxity, what appeared to be posterior,
but there was certainly no ability to frankly dislocate or sublux
the shoulder either anteriorly or posteriorly.   Therefore, I
elected to proceed with arthroscopy of the right shoulder.

He was placed in the left lateral decubitus position.  All bony
prominences were padded appropriately and axillary roll was
utilized.  The right shoulder and arm were sterilely prepped with
Betadine solution and draped in the usual fashion.

Standard arthroscopic portals were created after infiltration with
Marcaine and epinephrine.  The arthroscope was inserted from the

CORCORAN DISTRICT HOSPITAL
OPERATIVE REPORT - PAGE 2

PATIENT:  WILLIAMS, ANTONIO
#J05660
DATE OF SURGERY:  11/28/06

posterior portal and inspection of the glenohumeral joint was
carried out.

There was hypertrophic synovitis in the joint. A partial
synovectomy was performed. There was also considerable fraying
and tearing of the anterior glenoid labrum and there was a SLAP
lesion anteriorly. There was labral detachment anteriorly. There
was no evidence of a SLAP lesion superior to the biceps insertion.

Articular surfaces were intact. There appeared to be some very
minimal posterior laxity of the humeral head on the glenoid. The
rotator cuff appeared to be intact from the articular side.
Debridement of the anterior glenoid labrum was carried out with
the motorized shaver and the glenoid labrum was prepared with a
bur. Suretac was then utilized for repair of the anterior glenoid
labrum. An excellent repair was obtained with the Suretac. As
mentioned superiorly, the labrum was not detached.

The arthroscope was then removed and reinserted into the
subacromial space. There was abundant subacromial bursitis noted.
The rotator cuff was inspected and it was intact. There was
considerable narrowing of the subacromial space. Soft tissue was
cleared from the undersurface of the acromion in the usual manner
with the ArthroCare. The anterior acromioplasty was then
performed in the usual manner with the bur. The arthroscope was
also inserted laterally to ensure that the anterior lip of the
acromion had been adequately decompressed.

The rotator cuff was thoroughly inspected. There were no deep
partial-thickness or full-thickness tears noted. Further
debridement was carried out and then the arthroscope was removed.
Incisions were sutured with 4-0 nylon. Marcaine with epinephrine
was instilled into the joint. Betadine ointment, Adaptic, and
sterile dressings were applied followed by an arm sling.

He was transferred to the recovery room in satisfactory condition.
There were no complications. He tolerated the procedure well.

DAVID G. SMITH, M.D.

DGS/MST:db
D 11/28/06
T 11/28/06

*Exh 7*

# CALIFORNIA STATE PRISON - CORCORAN
## JOHN D. KLARICH MEMORIAL HOSPITAL

**DATE OF VISIT:** April 6, 2007

Mr. Williams is status post arthroscopy on his right shoulder back in November. At that time there was equivocal evidence of any subluxation of dislocation and I could not appreciate any frank instability under anesthesia. He did have a labral tear which was repaired at the time of surgery. However, he states that he still feels instability symptoms in his right shoulder. I cannot be certain as to the etiology of his symptomatology and for that reason I am ordering an MRI scan of his right shoulder. I will see him back following the MRI scan on the shoulder.

_____              _____
David G. Smith, M.D.                                        Date
Diplomate American Board of Orthopaedic Surgery

DGS/lb
D: 04/06/07
R: 04/11/07
T: 04/11/07
ORIG:    Unit Health Record
Cc:        Utilization Management

**ORTHOPAEDIC CLINIC NOTE**

NAME:   **WILLIAMS, ANTONIO**
CDC#:   **J-05660**
DOB:   **12/26/63**
INSTITUTION:   **CCI**

E x h 8

4-B

# MARSHALL S. LEWIS, M.D.

May 25, 2007

RE:
CHART #:           WILLIAMS, ANTONIO
CDC #:             IMC0339
                   J05660/California Correctional Institution

## INITIAL COMPREHENSIVE ORTHOPEDIC TELEMED CONSULTATION

The patient has a history and physical from Corcoran District Hospital. This was dictated on November 28, 2006. The impression at that time by Dr. David Smith was "Recurrent subluxation and dislocation of the right shoulder." It was felt the patient should undergo examination of the right shoulder under anesthesia at that time by Dr. Smith.

I am in receipt of an MRI of the right shoulder without contrast performed at Kern Radiology on August 18, 2005. The report was read by David Yuon. The conclusion by Dr. Yuon was "1) There is no rotator cuff tear, however, there is minimal tendinosis within the supraspinatus tendon; 2) There is minimal AC joint hypertrophy and arthritic change with minimal impression upon the underlying rotator cuff tendon; 3) There is a small amount of fluid within the subdeltoid space."

I am in receipt of an operative report from David G. Smith, M.D., at Corcoran District Hospital. The date of surgery was November 28, 2005. The postoperative diagnoses listed by Dr. Smith were "1) No evidence for recurrent dislocations, right shoulder; 2) SLAP lesion, right shoulder; 3) Severe impingement, right shoulder." The operation performed was "1) Examination of the right shoulder under anesthesia; 2) Arthroscopy of the right shoulder; 3) Debridement of hypertrophic synovitis with partial synovectomy; 4) Debridement of SLAP lesion and repair of SLAP lesion, right shoulder; 5) Arthroscopic subacromial decompression, right shoulder." This operative report has been reviewed in its entirety.

I am in receipt of a letter dated July 19, 2006, from UC Davis Health Systems. This report indicates "The patient suffered severe traumatic right shoulder glenohumeral dislocation. The shoulder was dislocated with dead arm syndrome, numbness, tingling and weakness in the arm since that time. He has had recurrent episodes of shoulder dislocation more than five occasions." Under the

*13061 Rosedale Highway, Ste. G, PMB 102-Bakersfield, CA 93312-Phone: (661) 589-2190 Fax: (661) 587-1427*

RE:  WILLIAMS, ANTONIO
Page 3
May 25, 2007


the right shoulder to determine if there is any injury to the
musculature and to the nerve innervation.  The patient will also
have an MRI of the right shoulder repeated to determine if there is
any evidence of subluxation.  It also felt, for the sake of
completeness, a bone scan should be performed to see if there is
any increased uptake throughout the right shoulder.  If this work-
up is completed and is negative, this will be discussed further
with the patient.

The patient was somewhat argumentative with myself today.  I feel
the patient certainly expressed his opinions in a rather raucous
way.  I also explained to the patient that we are trying to see if
there is anything clinical that we can find with his condition.
The patient refused to understand what I was trying to explain to
him.  He did get very verbal and the Correctional Sergeant had to
step in.  The patient kept yelling "Well, I'll see what you have to
say in court."  It was felt the patient was getting out of control
as far as verbal statements and the Correctional Sergeant had to
step in, and the Telemed consultation with the patient was then
terminated.



Marshall S. Lewis, M.D.

/sl

6/4/07

**KERN RADIOLOGY MEDICAL GROUP**
2301 Bahamas Drive
Bakersfield, CA 93309
(661) 322-1981

**TEHACHAPI STATE PRISON**
**FAX (661) 822-8586 or 823-3328**

PATIENT: WILLIAMS, ANTONIO          DOB: 12/26/63      CDC#: J05660
HOUSING #:

INTERPRETATION OF OUTSIDE FILMS: MRI OF THE RIGHT SHOULDER WITHOUT
CONTRAST: 06/29/2007

TECHNIQUE: Multiplanar images were obtained without intravenous contrast utilizing a series
of customized pulse sequences.

FINDINGS: There are moderate to severe arthritic and hypertrophic changes of the
acromioclavicular joint. There is food within the acromioclavicular joint sack and degenerative
cystic changes within the distal clavicle. The distal clavicle overrides the distal acromion and
there is mild impression upon the underlying supraspinatus tendon and muscle with mild
tendinosis of the supraspinatus tendon. There is no rotator cuff tear, either partial or full
thickness. The glenohumeral structures are normal. They biceps tendon is normally located and
intact. There is no atrophy cuff muscle bodies. Minimal degenerative subchondral cystic change
is present within the superior bony glenoid.

**IMPRESSION:**
1. Moderate to severe arthrosis and hypertrophy of the acromioclavicular joint as
   described above. As a result, there is mild impression upon the underlying
   supraspinatus tendon.
2. Mild tendinosis of the supraspinatus tendon, but no rotator cuff tear.
3. Minimal degenerative subchondral cystic change within the superior bony glenoid.

David D. Yuan, M.D.                    D: 07/05/2007  T: 07/06/2007/asa

Referring Physician: O'BRIEN, M.D.

*10*
*Exh* ▰

J05560

Referring Physician:
COLONIAL MEDICAL GROUP
820 34TH ST #102
BAKERSFIELD 93301

PROCEDURE:     NUCLEAR MEDICINE BONE SCAN, TRIPLE PHASE
COMPARISON:    None.
INDICATION:    RIGHT SHOULDER PAIN.

TECHNIQUE:     Following the intravenous injection of Tc-99m-HDP gamma camera views were
obtained in rapid succession resulting in a series of scintigraphic flow images.
This was immediately followed by blood pool images in the same orientation.
Delayed static scans were then performed of the indicated regions of interest.
Tc99m-HDP, 25.6 mCi

DOSE:

FINDINGS:    There is very slight increased flow to the area of the right acromioclavicular joint. Blood
pool image shows a similar slight asymmetric increased activity in the same area. The flow and blood pool
are otherwise intact. The delayed imaging shows intense accumulation of activity in the area as well. The
remaining static images are intact.

CONCLUSION:
1.  Abnormal exam as outlined above. Increased flow, blood pool, and delayed static activity in the
area of the right AC joint and acromion. Radiographs are recommended. Findings are compatible
with a hypermetabolic abnormality with increased bone turn over. Infection is a possibility but the
findings are nonspecific. Other possibilities should be considered as well. Even a healing fracture
could to have this appearance.

Dictated by: William M. Dunn, M.D. on 07/13/2007 at 14:06
Transcribed by: KH on 07/13/2007 at 14:30
Approved by: William M. Dunn, M D. on 07/13/2007 at 17:25

↑ ↑ *Enlarge*
↑ *Area* ↑

"11
Exh "

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ORIGINAL
FILED

FEB 2 2 2005

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

ANTONIO LUIS WILLIAMS,

        Plaintiff,

    v.

DIRECTOR OF DOJ, JOHN ASHCROFT,
ET AL.,

        Defendants.

No. C 04-1329 CW (PR)

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
AND TERMINATING ALL PENDING
MOTIONS

(Docket nos. 27, 8, 9, 11, 12,
14, 15, 20, 21, 22, 24, 25,
31, 32, 34, 38)

INTRODUCTION

Plaintiff Antonio Luis Williams, a State prisoner incarcerated at Pelican Bay State Prison (PBSP), filed this civil action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, requesting the Court to enjoin Defendants, officials of the Department of Justice (DOJ), from denying him access to documents which will prove that he is innocent of the crimes for which he was convicted.[1] The Court directed Defendants to respond to the complaint. Now pending is Defendants' motion for summary judgment, which has been briefed fully by the parties. For the reasons discussed below, the Court GRANTS the motion for summary judgment.

STANDARD OF REVIEW

Summary judgment is properly granted when no genuine and disputed issues of material fact remain and when, viewing the evidence most favorably to the nonmoving party, the movant is

---

[1]This Court denied on the merits Petitioner's federal petition for a writ of habeas corpus challenging the constitutional validity of his conviction. See Williams v. Runnels, 02-2310 CW (Order Denying Petition for a Writ of Habeas Corpus, Mar. 4, 2004). Petitioner appealed that ruling to the Ninth Circuit. On January 18, 2005, the Ninth Circuit affirmed the judgment of the District Court.

United States District Court
For the Northern District of California

clearly entitled to prevail as a matter of law.  Fed. R. Civ. P.
56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);
Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir.
1987).

The moving party bears the burden of showing that there is no
material factual dispute.  Material facts which would preclude
entry of summary judgment are those which, under applicable
substantive law, may affect the outcome of the case.  The
substantive law will identify which facts are material.  Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Where the moving
party does not bear the burden of proof on an issue at trial, the
moving party may discharge its burden of showing that no genuine
issue of material fact remains by demonstrating that "there is an
absence of evidence to support the nonmoving party's case."
Celotex, 477 U.S. at 325.  The burden then shifts to the nonmoving
party, who must go beyond the pleadings and, by its own affidavits
or discovery, "set forth specific facts showing that there is a
genuine issue for trial."  Fed. R. Civ. P. 56(e).  A complete
failure of proof concerning an essential element of the nonmoving
party's case necessarily renders all other facts immaterial.
Celotex, 477 U.S. at 323.  For purposes of summary judgment the
court must regard as true the opposing party's evidence, if
supported by affidavits or other evidentiary material.  Celotex,
477 U.S. at 324; Eisenberg, 815 F.2d at 1289.

BACKGROUND

The following statement of facts is undisputed unless
otherwise noted, and is taken from the allegations in Plaintiff's
verified complaint and the declarations and evidence submitted by

United States District Court

For the Northern District of California

2

United States District Court
For the Northern District of California

1    the parties in support of and in opposition to the motion for

2    summary judgment.

3        In February, 2000, Plaintiff sent what he refers to as a

4    "corruption complaint" against the Oakland Police Department to

5    John Ashcroft at the DOJ.  In January, 2001, he sent a copy of a

6    September, 2000, complaint to President Bush, informing him that

7    DOJ officials had taken no action.  Plaintiff received a letter

8    from the DOJ dated February 26, 2001.  The letter was from the

9    Special Litigation Section of the Civil Rights Division (CRD).  It

10   informed Plaintiff that the CRD's authority does not extend to

11   investigating individual grievances and suggested that Plaintiff

12   consider contacting a private attorney.  See Hermilla Decl. in

13   Support of Motion for Summary Judgment, Ex. B.  The letter was

14   assigned DOJ file number 168-11E-0/125981.

15       Thereafter, Plaintiff submitted a FOIA request to the DOJ

16   asking for all information and documents contained in DOJ file

17   number 168-11-E-0/125981.  The CRD received the request on July 5,

18   2002, and the FOI/PA Branch of the CRD received the request on

19   March 7, 2003.  See id., Ex. A.  In response to the request, the

20   FOI/PA Branch searched to locate responsive records and determined

21   that, other than the February 26, 2001, letter from the Special

22   Litigation Section, the CRD had no responsive documents.  This

23   determination was confirmed by the fact that Plaintiff's February

24   26, 2001, letter had a "0" file number, which indicated that no

25   investigation was opened and that any records in the "0" file would

26   have been destroyed in accordance with the National Archives and

27   Records Administration records retirement schedule.

28       In a letter dated August 13, 2003, the Chief of the FOI/PA

United States District Court
For the Northern District of California

Branch explained to Plaintiff that no documents existed within DOJ file 168-11E-0 and informed him of his appeal rights.  On September 5, 2003, Plaintiff sent an appeal to the DOJ Office of Information and Privacy.  In a letter dated November 26, 2003, that office affirmed the CRD's actions.

Plaintiff filed this action on April 6, 2004.  In an Order dated June 24, 2004, the Court directed Defendants to respond to the complaint.  Upon receiving the Court's Order, the FOI/PA Branch learned for the first time of letters that Plaintiff had sent to Tamara Miller, the former Deputy Chief of the Criminal Section. The FOI/PA Branch then conducted additional FOIA searches--both manual and computer-based--to determine if there were any further responsive documents.  The FOI/PA Branch's additional searches revealed that the Criminal Section had opened a file and sent information relating to Plaintiff's allegations to the Federal Bureau of Investigation (FBI).  The FOI/PA Branch's additional inquiry also revealed that the Criminal Section's file on the matter is an open investigation.

In a letter dated September 3, 2004, the FOI/PA Branch informed Plaintiff that he might wish to contact the FBI to request any documents relating to his allegations.  In addition, on September 14, 2004, the FOI/PA Branch produced eighteen pages of responsive documents relating to the Criminal Section's open investigation, but withheld fourteen pages of documents under various provisions of the FOIA.  Specifically, the CRD denied Plaintiff access to attorney e-mails and other notes regarding its investigation of Plaintiff's allegations, pursuant to 5 U.S.C. § 552(b)(7)(A), on the ground that disclosure thereof could

4

1   reasonably be expected to interfere with ongoing law enforcement
2   proceedings.  The CRD also denied access to these records pursuant
3   to 5 U.S.C. § 552(b)(5), on the ground that the records contain
4   attorney work product and pre-decisional deliberative materials,
5   and pursuant to 5 U.S.C. § 552(b)(7)(C), on the ground that
6   disclosure thereof could reasonably be expected to constitute an
7   unwarranted invasion of the personal privacy of witnesses,
8   interviewees and/or targets.  Plaintiff did not file an appeal
9   regarding the September 14, 2004, response to his request.

                              DISCUSSION

11      The FOIA mandates a policy of broad disclosure of government
12  documents when production is properly requested of an agency.  See
13  5 U.S.C. § 552(a).  The FOIA obligates the government to produce
14  documents within its "possession or control."  See Kissinger v.
15  Reporters Comm. for Freedom of Press, 445 U.S. 136, 150-51 (1980).
16  If a government agency claims that it does not possess or control a
17  requested document, the agency must show it fully discharged its
18  statutory obligations by conducting a search reasonably calculated
19  to uncover all relevant documents.  See Urban v. United States, 72
20  F.3d 94, 95 (8th Cir. 1995); Weisberg v. United States Dep't of
21  Justice, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  The issue to be
22  resolved is not whether there might exist any other documents
23  possibly responsive to the request, but rather whether the search
24  for those documents was adequate.  The adequacy of the search, in
25  turn, is judged by a standard of reasonableness and depends upon
26  the facts of each case.  See Zemansky v. EPA, 767 F.2d 569, 571
27  (9th Cir. 1985).
28      An agency may withhold a requested document only if it falls

United States District Court

For the Northern District of California

1   within one of nine statutory exemptions to the disclosure

2   requirement. See Dobronski v. FCC, 17 F.3d 275, 277 (9th Cir.

3   1994) (citing 5 U.S.C. § 552(b)). The FOIA establishes federal

4   district court jurisdiction to conduct de novo review of agency

5   decisions to deny requested access to agency records. Jurisdiction

6   is dependent upon a showing that an agency has (1) improperly (2)

7   withheld (3) agency records. See Kissinger, 445 U.S. at 150.

8   "Judicial authority to devise remedies and enjoin agencies can only

9   be invoked, under the jurisdictional grant conferred by § 552, if

10  the agency has contravened all three components of this

11  obligation." Id.

12       The FOIA requires that administrative appeals be exhausted

13  before suit may be brought in federal court. See Hymen v. Merit

14  Systems Protection Bd., 799 F.2d 1421, 1423 (9th Cir. 1986), cert.

15  denied, 481 U.S. 1019 (1987). Failure to do so is grounds for

16  dismissal for lack of subject matter jurisdiction. Id.

17       Defendants argue that Plaintiff's complaint must be dismissed

18  as moot because the CRD FOI/PA Branch has provided him with

19  eighteen pages of responsive documents and he has not challenged

20  that decision. Defendants also assert that any challenge to their

21  withholding of fourteen pages of exempt documents under 5 U.S.C.

22  §§ 552(b)(7)(A), (b)(5) and (b)(7)(C) must be dismissed because

23  Plaintiff has not exhausted his administrative remedies.

24       The Court agrees with Defendants' assessment. An action to

25  compel the production of documents under the FOIA is mooted when

26  the agency in control of the requested documents delivers them to

27  the plaintiff. See Carter v. Veterans Admin., 780 F.2d 1479, 1481

28  (9th Cir. 1986). Dismissal is then warranted. See id. This is so

1  even if the documents are provided after the Plaintiff has filed

2  suit in district court, and notwithstanding the agency's initial

3  provision of erroneous and incomplete information to the Plaintiff.

4  Id.; see also Papa v. Untied States, 281 F.3d 1004, 1013 (9th Cir.

5  2002) (production of all nonexempt material, however belatedly,

6  moots FOIA claims).  Here, Plaintiff's complaint sought to enjoin

7  Defendants from withholding documents responsive to his FOIA

8  request.  Since the complaint was filed Defendants have provided

9  Plaintiff with all responsive material which they claim is

10 nonexempt.  Plaintiff has not challenged this decision by way of an

11 agency appeal and his opposition to Defendants' motion for summary

12 judgment does not address Defendants' argument.  Accordingly,

13 because the agency has provided Plaintiff with all responsive

14 nonexempt documents in its possession and Plaintiff has not

15 challenged this decision, his request for Court action is moot.

16     To the extent Plaintiff is dissatisfied with Defendants'

17 response to his FOIA request and seeks access to the documents

18 which Defendants claim are exempt, he must exhaust all DOJ CRD

19 FOI/PA administrative remedies before pursuing such claim in

20 federal court.  In his September 14, 2004, letter to Plaintiff,

21 Nelson Hermilla, Chief of the CRD, tells Plaintiff how he can

22 appeal the CRD's decision.

23     Plaintiff has failed to raise a triable issue of fact with

24 respect to whether his claim that Defendants have failed to provide

25 him with responsive documents is moot.  He also has failed to raise

26 a triable issue of fact with respect to whether he has exhausted

27 administrative remedies in response to Defendants' refusal to

28 provide him with certain documents.  Accordingly, summary judgment

United States District Court
For the Northern District of California

7

1  is GRANTED to Defendants on the grounds of mootness and

2  nonexhaustion of administrative remedies.

3                         PLAINTIFF'S PENDING MOTIONS

4       Since June 28, 2004, Plaintiff has filed fifteen ex parte

5  motions, which the Court now reviews.

6       Plaintiff has filed two motions for immediate injunctive

7  relief.  He seeks transfer to a hospital to X-ray a dislocated

8  shoulder he suffered after allegedly being beaten in 2002.  This

9  claim was addressed by the Court in Plaintiff's action, <u>Williams v.</u>

10 <u>Runnels</u>, C 04-0782 CW, filed on March 16, 2004.  Accordingly, the

11 motions for immediate injunctive relief are DENIED (docket nos. 8,

12 20).

13      Plaintiff has filed two motions asking the Court to recuse

14 itself from presiding over this action.  Specifically, Plaintiff

15 maintains that the Court's denial of his federal habeas petition

16 (<u>Williams v. Runnels</u>, C 02-2310 CW) was erroneous and the Court is

17 biased against him.  Plaintiff's allegations are legally

18 insufficient to establish that the Court has a personal bias or

19 prejudice against him.  Accordingly, the motions for recusal are

20 DENIED (docket nos. 9, 24).  <u>See</u> 28 U.S.C. § 144; <u>United States v.</u>

21 <u>$292,888.04 in U.S. Currency</u>, 54 F.3d 564, 566 (9th Cir. 1995)

22 (affidavit inadequate when based on mere conclusory allegations).

23 Plaintiff's motions asking the Court to notify the Ninth Circuit

24 that his conviction should be reversed based on newly discovered

25 evidence are also DENIED (docket nos. 31, 34, 38).  Plaintiff

26 should have raised any arguments concerning this Court's ruling on

27 his habeas petition to the Ninth Circuit in his appeal.

28      Plaintiff has filed two motions to award monetary damages.

United States District Court

For the Northern District of California

1  Damages are not available in a FOIA action.  See 5 U.S.C.

2  § 552(a)(4)(B); Gale v. United States Dep't of Justice, 628 F.2d

3  224, 226 n.4 (D.C. Cir. 1980).  Accordingly, these motions are

4  DENIED (docket nos. 14, 32).

5      Plaintiff has filed two discovery motions asking the Court to

6  order the DOJ to provide him with documents.  Access to these

7  documents is the gravamen of Plaintiff's FOIA claim, which has been

8  denied for the reasons set forth above.  Accordingly, these

9  discovery requests are DENIED as moot (docket nos. 11, 21).

10     Plaintiff has filed a motion asking the Court to reconsider

11 that portion of its June 24, 2004, Order dismissing Plaintiff's

12 non-FOIA claims.  Plaintiff has not presented persuasive grounds

13 for reconsideration.  Accordingly, this motion is DENIED (docket

14 no. 12).  See Civil L.R. 7-9.

15     Plaintiff's motions to appoint counsel, to call an expert

16 witness and for leave to proceed in forma pauperis are DENIED as

17 moot (docket nos. 15, 22, 25).

18                          CONCLUSION

19     For the foregoing reasons, Defendants' motion for summary

20 judgment is GRANTED.  (Docket no. 27).  The Clerk of Court shall

21 terminate all pending motions and enter judgment in favor of

22 Defendants.

23     IT IS SO ORDERED.

24 DATED:  2/22/05

25                    /s/ CLAUDIA WILKEN

26                    _____
                     CLAUDIA WILKEN
27                    United States District Judge

28

EXHIBIT 12

IN THE U.S DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

**ORIGINAL FILED**

SEP - 1 2006

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

ANTONIO LUIS WILLIAMS
vs
DWIGHT WINSLOW ET. AL

CASE NO.

105-CV-01560-OWW-WMW

AFFADAVIT TO ASSIGNED JUDGE, U.S D.O.J PARALEGAL SPECIALIST KEVIN J. CALLAHAN CRIM SECT OF OFFER SETTLEMENT AGREEMENT:

PETITIONER, COME WITH SAID AFFADAVIT AS TITLED RESPECTFULLY IN PENDING MATTER IN SAID U.S.D.C, U.S DEPT OF JUSTICE, ON AUG 14, 06 PETITIONER SERVED A ORIGINAL, AND COPY OF THIS AFFADAVIT ON THIS COURT AND ATTORNEY GENERAL BILL LOCKYER AND NOT U.S DEPT. OF JUSTICE CRIM SECTION SEE ATTACHE MARKED EXHIBIT 1, PETITIONER BY THIS AFFADAVIT HERE OF IS NOTICE HE NOW HAS INCLUDED AND SERVED A COPY ON U.S DEPT OF JUSTICE CRIM SECTION PARALEGAL SPECIALIST KEVIN J. CALLAHAN

RESPECTFULLY SUBMITTED

DATED: 8-29-06

I DECLARE UNDER PENALTY OF PERJURY ALL TRUE.

Antonio Williams
J05660

IN THE U.S DISTRICT COURT FOR THE
EASTERN DISTRICT OF CALIFORNIA

ANTONIO LUIS WILLIAMS
VS.
DWIGHT WINSLOW ET, AL

CASE NO.
105-CV-01560-OWW-W MW

AFFADAVIT TO:
ASSIGNED JUDGES
ATTY GEN BILL LOCKYER
OF OFFER SETTLEMENT
AGREEMENT:

**ORIGINAL
FILED**

AUG 1 7 2006

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
          DEPUTY CLERK

PETITIONER HEREBY COME WITH SAID TITLED
AFFADAVIT RESPECT FULLY IN PENDING MATTER
NO ORDER OF COMPLAINT BEEN SERVED TO
PETITIONERS KNOWLEDGE ON DEFENDANTS
OR ATTORNEY GENERAL OFFICE REPRESENTATIVE
FOR DEFENDANTS (PLATA VS. DAVIS) PETITIONER
STATES HEIS BEEN WITHOUT MEDICAL TREAT-
MENT FOR A DISLOCATED SHOULDER 4YRS
4 MONTHS SUFFERED BY A MAY 14 02 EXCESS-
IVE FORCE AND ALLEGEDLY OPEN TO A INVEST-
IGATION BY U.S. D.O.J SEE EXHIBIT A DEC 7,05
COURT ORDER, AND IT'S CONSOLIDATING CASE NO. 105-
CV-01560-OWW-WMK PENDING THEREIN U.S.D.C
FOR EASTERN DISTRICT OF CALIF. PETITIONER STATES
AS APART OF ANY MONETARY SETTLEMENT FROM
DEFENDANTS IN THIS CASE OR PENDING CON-
SOLIDATED ACTIONS HE'S WILLING, WISHES
TO SETTLE THESE CASES COLLECTIVELY
AND APART OF ANY AGREEMENT

1.

Will, Wishes To Withdraw Complaint Against officers sent to U.S. Dept. of Justice information response to it is Letter Dated Nov 8, 02 For Investigation, Any pending investigation And of changes and settle Assault Excessive Force, Injury claim only by civil Monetary Damages, This info, Affadavit included to settle in this Agreement pending civil Complaint Filed Apr 28, 06 case no. 106-cv-00511-Awimw Harold Tate et, al v. S. Williams Filed After This Action Against Chief Medical Officer Here at Calif Correctional Institution by Deliberate Indifference Also Denied, Delayed, obstructed Medical Treatment For Dislocated shoulder, Also See Exhibit UBC Witness Letter of seeing Injury, Verifying + Plus Picture of Injury Existence, Also See Exhibit D U.S. Dept. of Injury Existence, of Inquiry

Respectfully Submitted

I Declare under Penalty of Perjury All True

Dated: 8-14-06

Antonio Williams

2

*Exh A*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ANTONIO LUIS WILLIAMS,      No.  C 05-2002 CW (PR)

*ORIGINAL FILED*

           Plaintiff,

*DEC - 1 2005*

     v.

*RICHARD W. WIEKING*
*CLERK, U.S. DISTRICT COURT*
*NORTHERN DISTRICT OF CALIFORNIA*
*OAKLAND*

N. ALBONICO, ET AL.,

           Defendants.
_____/

ANTONIO LUIS WILLIAMS,      No.  C 05-4200 CW (PR)

           Plaintiff,

     v.                     <u>ORDER CONSOLIDATING AND
                            TRANSFERRING ACTIONS TO THE
                            UNITED STATES DISTRICT COURT
                            FOR THE EASTERN DISTRICT OF
                            CALIFORNIA</u>

DWIGHT WINSLOW, ET AL.,

           Defendants.
_____/

     Plaintiff Antonio Luis Williams is a prisoner of the State of
California who was incarcerated at Pelican Bay State Prison (PBSP)
when he filed this civil rights complaint.  Since June 16, 2005,
however, he has been incarcerated at Tehachapi Sate Prison, which
is located in Kern County, California.

     In an Order dated December 22, 2004, this Court held that
Plaintiff generally is barred from proceeding <u>in forma pauperis</u> in
federal court under the provisions of 28 U.S.C. § 1915(g).[1]  Both

---

[1]The Prison Litigation Reform Act of 1995 (PLRA), which was enacted
on April 26, 1996, provides that a prisoner may not bring a civil action
or appeal a civil judgment under the <u>in forma pauperis</u> provisions of 28
U.S.C. § 1915:

     [I]f the prisoner has, on 3 or more prior occasions, while
     incarcerated or detained in any facility, brought an action or
     appeal in a court of the United States that was dismissed on
     the grounds that it is frivolous, malicious, or fails to state

United States District Court
For the Northern District of California

1   prior to and since the entry of that Order Plaintiff filed actions
2   seeking to compel prison officials at PBSP to provide him with
3   treatment for an injured shoulder from which he has suffered since
4   prison officials used force against him at High Desert State Prison
5   (HDSP) in 2002. Plaintiff did receive x-rays at PBSP in May, 2004,
6   and the doctor told him that no injury was present. Because
7   Plaintiff was not allowed to see the x-rays, however, he objected
8   to the doctor's conclusion and continued to seek additional
9   diagnostic procedures and medical care.

10      The Court dismissed Plaintiff's complaints without prejudice
11  because of his conceded failure to exhaust administrative remedies,
12  see, e.g., Williams v. McGrath, C 04-2542 CW, and because he had
13  not made the requisite showing for application of the "imminent
14  danger of serious physical injury" exception to § 1915(g), see In
15  re: Antonio Luis Williams, Nos. C 04-5041 CW, C 04-5255 CW, C 05-
16  0253 CW. With respect to the imminent danger exception the Court
17  wrote:

18      If Plaintiff maintains that he is in need of immediate
19      medical care and is unable to pay the filing fee, he may
        seek leave to proceed with this claim under § 1915(g)
20      PROVIDED that he files a civil rights complaint which
        asserts ONLY this claim and which names as Defendants
21      those individuals at Pelican Bay State Prison who are
        responsible for denying him medical care and/or who can
22      provide him with relief. If Plaintiff continues to make
        conclusory allegations about the care to which he
23      maintains he is entitled and continues to name the Court,
        who is not responsible for Plaintiff's medical care, as a
24      Defendant, his actions will be dismissed.

25      The present complaints are duplicative of past actions
        filed by Plaintiff and do not allege facts which fall
26      within the "imminent danger of serious physical injury"

27  _____

28      a claim upon which relief may be granted, unless the prisoner
        is under imminent danger of serious physical injury.

    28 U.S.C. § 1915(g).

*United States District Court*
*For the Northern District of California*

1    exception to § 1915(g).  Accordingly, they will be
     dismissed.

2

3    Order at 3 (Apr. 27, 2005).

4        Shortly thereafter, Plaintiff filed the first of his present

5    complaints, Williams v. Albonico, C 05-2002 CW, in which he repeats

6    previously raised allegations that PBSP Warden Joe McGrath

7    conspired with Chief Medical Doctor Dwight Winslow not to treat him

8    for his shoulder injury in an attempt to obstruct an investigation

9    by the Department of Justice (DOJ) into the cause of the injury,

10   and that after he was assaulted at HDSP x-rays were taken of his

11   shoulder on May 15, 2002, but he was told falsely that they were

12   negative.  He alleged that the imminent danger exception to

13   § 1915(g) applied because he was in imminent danger of having

14   charges filed against him because of complaints he had filed with

15   the DOJ.  It was not until July 22, 2005, when the Court received a

16   document from Plaintiff entitled "Affadavit [sic] of Witness, of

17   Injury," that Plaintiff's request for additional medical care for

18   his shoulder was made clear.  By then, Plaintiff had been

19   transferred to Tehachapi State Prison.  Since then, Plaintiff has

20   continued to file numerous documents in this action, most of them

21   duplicative, which seek damages from various doctors and injunctive

22   medical relief from doctors at Tehachapi State Prison.

23

24       On October 18, 2005, Plaintiff filed another civil rights

25   action, Williams v. Winslow, et al., C 05-4200 CW, in which he

26   seeks damages for allegedly inadequate medical care by PBSP doctors

27   and injunctive medical relief from doctors at Tehachapi State

28   Prison.

         On November 9, 2005, Plaintiff filed a motion to consolidate

                                    3

1  the two pending actions.

2      The Court finds that, standing alone, Plaintiff's claims for

3  damages for inadequate medical care do not meet the imminent danger

4  exception to the exhaustion requirement. But, liberally construed,

5  his claims for injunctive medical relief do. Therefore, the Court

6  will not dismiss the complaints under § 1915(g). Because Plaintiff

7  now is incarcerated at Tehachapi State Prison, however, the Court

8  will transfer the complaints to the United States District Court

9  for the Eastern District of California.

10

11     Accordingly, in the interests of justice, Plaintiff's request

12  to consolidate these actions is GRANTED. The Clerk of the Court

13  shall CONSOLIDATE the cases into the low case number, C 05-2002 CW,

14  and shall TRANSFER the files forthwith to the United States

15  District Court for the Eastern District of California. 28 U.S.C.

16  § 1406(a).

17     IT IS SO ORDERED.

18  DATED: 12/1/05

19

20

21                           CLAUDIA WILKEN
                             United States District Judge

22

23

24

25

26

27

28

*Exhibit B*



# California Prison Focus

2940 16th Street, Suite B-5  San Francisco, CA 94103
**Phone: (415) 252-9211**   Fax: (415) 252-9311
www.prisons.org

Chief Medical Officer Tate
California Correctional Institution·
P.O. Box 1031
Tehachapi, CA  93581

June 27, 2005

**Re: Antonio Williams, J-05660**

Dear C.M.O. Tate:

    I am writing in regards to an untreated medical need of Antonio Williams, a prisoner recently transferred to CCI-Tehachapi. Mr. Williams has a dislocation of his right shoulder, which occurred three years ago. Mr. Williams has received no treatment for 3 years. If Mr. Williams holds his hands behind his back in a certain way, his shoulder has a large lump on it, about the diameter of a tennis ball, which is discolored. I personally observed the lump on a visit with him last month.

    The Chief Medical Officer of Pelican Bay sent a letter to our office on 12-22-04, stating that Williams's shoulder x-ray was normal. However, Mr. Williams·has informed me that he continues to suffer chronic shoulder pain, which manifests as follows: he can't exercise; he can't effectively press his arm down while writing, making it harder for him to write (he is right-handed); he "feels the separation" in his joint.

    Mr. Williams has never seen an orthopedist about his condition, and he has never received an MRI. I am not a doctor or medical expert, but I know that, at a minimum, given the large, discolored lump which is visible on his shoulder, and his continued complaints of pain, he ought to see a specialist. To deny him the attention of a specialist may be to deny him the ordinary standard of care. In addition, I am concerned that CDC has not released Mr. Williams' medical files to CPF, despite the fact that Mr. Williams informs me that he signed and submitted an authorization for us to view his files.

    Mr. Williams is currently in the process of exhausting the 602 process, having submitted a third-level appeal last month. In the meantime, he awaits medical attention and care which is consistent with the ordinary standard of medical care. Please provide him with the needed medical attention, and please contact me at 415-252-9211 to discuss this matter.

Sincerely,

Scott Handleman, Attorney at Law

Cc: Antonio Williams

*Exh C*

STATE OF CALIFORNIA

**MEDICAL REPORT OF INJURY
OR UNUSUAL OCCURRENCE**

DEPARTMENT OF CORRECTIONS

| NAME OF INSTITUTION | FACILITY/UNIT | REASON FOR REPORT *(circle)* | | ON THE JOB INJURY | DATE 1-21-06 |
|---|---|---|---|---|---|
| CCI | NB | USE OF FORCE / **INJURY** / UNUSUAL OCCURRENCE | | PRE AD/SEG ADMISSION | 1-21 |

| | NAME | LAST | FIRST | CDC NUMBER | HOUSING LOC. | NEW HOUSING LOC. |
|---|---|---|---|---|---|---|
| THIS SECTION FOR INMATE ONLY | | Williams | | J05640 | 4c-105L | |

| | NAME | LAST | FIRST | BADGE # | RANK/CLASS | ASSIGNMENT/RDOs |
|---|---|---|---|---|---|---|
| THIS SECTION FOR STAFF ONLY | | | | | | |

| | NAME | LAST | FIRST | MIDDLE | DOB | OCCUPATION |
|---|---|---|---|---|---|---|
| THIS SECTION FOR VISITOR ONLY | | | | | | |
| | HOME ADDRESS | | CITY | STATE | ZIP | HOME PHONE |

| PLACE OF OCCURRENCE | DATE/TIME OF OCCURRENCE | NAME OF WITNESS(ES) |
|---|---|---|
| D4 #4 | 1-21-06 @ 1745 | |

| TIME NOTIFIED | TIME SEEN | ESCORTED BY | MODE OF ARRIVAL *(circle)* | | AGE | RACE | SEX |
|---|---|---|---|---|---|---|---|
| 1740 | 1745 | ofc. Hopwood, Pelato | LITTER   WHEELCHAIR   AMBULATORY   (ON SITE) | | 42 | BLK | M |

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE

I/m stated, "officer Miles & Hopskin slammed me into the shower." "I already had a sore shoulder."

| INJURIES FOUND?   (YES) / NO | |
|---|---|
| Abrasion/Scratch | 1 |
| Active Bleeding | 2 |
| Broken Bone | 3 |
| Bruise/Discolored Area | (4) |
| Burn | 5 |
| Dislocation | 6 |
| Dried Blood | 7 |
| Fresh Tattoo | 8 |
| Cut/Laceration/Slash | 9 |
| O.C. Spray Area | 10 |
| Pain | 11 |
| Protrusion | 12 |
| Puncture | 13 |
| Reddened Area | 14 |
| Skin Flap | 15 |
| Swollen Area | 16 |
| Other | 17 |
| | 18 |
| | 19 |



Old #4

| O.C. SPRAY EXPOSURE? | YES / NO |
|---|---|
| DECONTAMINATED? | YES / NO |
| Self-decontamination instructions given? | YES / NO |
| Refused decontamination? | YES / NO |
| Q 15 min. checks | |
| Staff issued exposure packet? | YES / NO |

| RN NOTIFIED/TIME | PHYSICIAN NOTIFIED/TIME |
|---|---|
| | |

TIME/DISPOSITION

| REPORT COMPLETED BY/TITLE    (PRINT AND SIGN) | BADGE # | RDOs |
|---|---|---|
| A. CAPINHA MTA   *[signature]* MTA | 68071 | S/M |

*(Medical data is to be included in progress note or emergency care record filed in UHR)*

CDC 7219 (Rev. 11/02)    DISTRIBUTION:  ORIGINAL - UHR    CANARY - CUSTODY    PINK - HEALTH AND SAFETY/RTW COORDINATOR



U.S. Department of Justice

Civil Rights Division



ANM:TLM:yl:bah
DJ 144-11E-1434

*Criminal Section - PHB*
*950 Pennsylvania Avenue, N.W.*
*Washington, DC 20530*

NOV    8

Mr. Antonio Williams
J05660
High Desert State Prison
P.O. Box 3030
Susanville, CA    96127

Dear Mr. Williams:

   This is in response to your undated letter, in which you allege that you were physically assaulted by corrections officers in High Desert State Prison on May 14, 2002.

   The Federal Bureau of Investigation has been requested to conduct a preliminary investigation into this matter. You can be assured that if the evidence shows that there is a prosecutable violation of federal criminal civil rights statutes, appropriate action will be taken.

      Thank you for bringing this matter to our attention.

                              Sincerely,

                        Albert N. Moskowitz
                          Section Chief
                         Criminal Section
                       Civil Rights Division

            By:

                        Tamara Miller
                        Deputy Chief
                       Criminal Section

cc: Records  Chrono Levy T. 10/31/02
S:\ylevy\MyFiles\Correspondence\Citizen Letters\Williams_Antonio
FBI.wpd

## FORM E

### Proof of Service by Mail

CASE NO. 105-CV-01560-OWW-WMW
[Case Name and Court Number] WILLIAM V VS DWIGHT WINGLOW ET.AL

I declare that:

I am a resident of C.C.I in the county of TEHACHAPI,
California. I am over the age of 18 years. My residence address is: CALIFORNIA CORRECTIONAL
INSTITUTION P.O BOX 1906 1-A-101 TECHACHAPI, CA 93587.
On 8-14-06, I served the attached AFFADAVIT OF OFFER SETTLEMENT on the
CLERK, ATTY GENERAL in said case by placing a true copy thereof enclosed in a sealed
envelope with postage thereon fully paid, in the United States mail at C.C.I
addressed as follows: CLERK OF U.S.D.C OF EASTERN DISTRICT OF
CALIFORNIA U.S COURT HOUSE BUILDING 1130 "O" ST. FRESNO,
CA 93727, ATTY GEN BILL LOCKYER P.O BOX 944255, SACRAMENTO.
CALIF 94244

I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct, and that this declaration was executed on 8-14-06 [date],
at TEHACHAPI, California.


ANTONIO WILLIAMS
[Type or Print Name]


Antonio Williams
[Signature]

**FORM E**

Proof of Service by Mail

[Case Name and Court Number] *CASE NO. 705 - CV - 01560 - OWOW - WMW*
*WILLIAMS V DWIGHT WINDLOW ET. AL*

I declare that:

    I am a resident of _____*C.C.I*_____ in the county of _*TEHACHAPI*_,

California. I am over the age of 18 years. My residence address is: *CALIFORNIA CONNECTIONAL*

*INSTITUTION P.O BOX 1906 1-A-701 TEHACHAPI, CA 93581*
                      *EMERGENCY MOTION,*
On _*8-29-06*_ , I served the attached *AFFADAVIT OF OFFER SETTLEMENT* on the

*CLERK / KEVIN J. CALLAMAN* in said case by placing a true copy thereof enclosed in a sealed

envelope with postage thereon fully paid, in the United States mail at _____*C.C.I*_____

addressed as follows: *COURT CLERK OF U.S. D.C EASTERN DISTRICT OF*

*CALIF U-S COURTHOUSE BUILDING 1130 "O" ST. FRESNO, CA 93721,*
*PARALEGAL SPECIALIST KEVIN J. CALLAHAN*
*US DEPT. JUSTICE CRIM SECT 950 PENNSYLVANIA AVE WASHINGTON D.C*
*20530*
    I declare under penalty of perjury under the laws of the State of California that the

foregoing is true and correct, and that this declaration was executed on _*8-29-06*_ [date],

at _*TEHACHAPI*_ , California.

                              *ANTONIO WILLIAMS*
                              [Type or Print Name]

                              *Antonio Williams*
                              [Signature]